CONNOR ET AL. *v.* UNITED STATES (No. 1960).[1]

1. CONSTRUCTION, PARAGRAPH 289, TARIFF ACT OF 1913—"FLANNELS."

While paragraph 379, tariff act of 1909, was limited to flannels for *underwear*, its successor, paragraph 289, tariff act of 1913, covers *all* flannels, regardless of use.

2. EVIDENCE, WEIGHT AND SUFFICIENCY OF—COMMERCIAL DESIGNATION—FLANNEL—WOOL CLOTH—DRESS GOODS.

With conflicting testimony as to the meaning of the term "flannels," the Government can not be said to have established a commercial designation different from the common meaning, in the face of harmonious testimony by the importers' witnesses that the merchandise is flannels, supported as to much of it by the finding of a Government appraiser and examiners to the same effect. The decision of the Board of United States General Appraisers sustaining the collectors' classifications as cloths composed wholly or in chief value of wool under paragraph 288, tariff act of 1913, or as women's and children's dress goods, composed wholly or in chief value of wool under paragraph 290 and overruling protests claiming classification as "flannels" under paragraph 289 is reversed except as to certain items admitted by importers' witnesses not to be flannels. This decision is predicated upon the stipulation of counsel that goods covered by various protests are substantially of the same kind.

United States Court of Customs Appeals, December 31, 1919.

APPEAL from Board of United States General Appraisers, G. A. 8211 (T. D. 37829).

[Modified.]

*Comstock & Washburn* (*Albert H. Washburn* and *Henry J. Rode* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel) for the United States.

[Oral argument Oct. 31, 1919, by Mr. Washburn and Mr. Lawrence.]

Before MONTGOMERY, SMITH, DE VRIES, and MARTIN, Judges; BARBER, Judge, participating in the decision by agreement of counsel.

SMITH, Judge, delivered the opinion of the court:

Certain textile fabrics were held by the collectors of customs at the ports of New York and Philadelphia to be dutiable at 35 per cent ad valorem, either as cloths composed wholly or in chief value of wool under paragraph 288, or as women's and children's dress goods, composed wholly or in chief value of wool under paragraph 290 of the tariff act of 1913. Paragraphs 288 and 290, in so far as they are material to the case, read as follows:

Par. 288. Cloths * * * and all manufactures of every description made, by any process, wholly or in chief value of wool, not specially provided for in this section, thirty-five per centum ad valorem.

Par. 290. Women's and children's dress goods * * * composed wholly or in chief value of wool and not specially provided for in this section, thirty-five per centum ad valorem.

---

[1] T. D. 38241 (38 Treas. Dec., —).

The importers claimed that the goods were dutiable under paragraph 289 of the tariff act of October 3, 1913, the pertinent part of which reads as follows:

Par. 289. * * * flannels, composed wholly or in chief value of wool, twenty-five per centum ad valorem; flannels composed wholly or in chief value of wool, valued at above fifty cents per pound, thirty per centum ad valorem.

The appraiser and the examiners of the merchandise returned the goods as flannels or wool flannels with the exception of the items covered by protests 815838, 813424, 811497, 808650, 803192, 789432, 803600, 806374, 807546, 809088, 809279, 810232, 814805, 760078, 807190, 807191, 809671, 809678, 809688, 809693, and 804227, which were returned as wool cloth. The collector in his report to the board describes the goods covered by protests 807190, 807191, 809671, 809687, 809688, 809693, and 804227, as *flannels* dutiable as wool cloth.

As to protests 804227, 809671, 809687, 809688, 809693, 807190, 807191, of J. B. Ellison & Sons, it was stipulated that the merchandise involved was substantially the same as that covered by the records in protests 761896, etc., of R. Connor, and protests 785384, etc., of Baruch, Wolff & Co.

The Government contended before the board that the term "flannel" had a different meaning in the trade from that commonly assigned to it by people in general, and to prove that contention introduced in evidence the testimony of Robert F. Francis, John E. J. Clare, F. A. Tracy, E. M. Stout, W. A. Tucker, and C. J. Mass, submitted as to similar goods on the hearing of the protests of Baruch, Wolff, et al., 785384, etc.

The testimony of Robert F. Francis was to the effect that flannels were made of a short soft stock and had a loom width of 54 to 56 inches; that the set of the loom for the making of flannels was narrower than that employed in the making of cassimeres and cheviots, although not narrower than that used for worsteds; that the stock from which flannels were made was radically different from that required for the production of worsteds, cheviots, and cassimeres; that worsteds differed from flannels, inasmuch as worsteds were made of combed yarn and flannels of carded yarn.

According to this witness, flannel was practically not fulled or shrunk at all and that little or no fulling was characteristic of flannels. He said that flannels were sponged unfulled fabrics, whereas cheviots, worsteds, and cassimeres were firmly fulled; that *in the men's trade a* flannel is a woven fabric in either plain or twilled weave, made from fairly short staple, soft stock—wool, or largely so—and manufactured entirely or with a great proportion of the weight of carded yarns, which are rather loosely woven; that the finished flannel has considerable face and has practically the texture which

it had on leaving the loom; that flannels have no luster, are fulled but slightly, and are of a softer handle and appearance than the more firmly fulled and woven thibets, meltons, cassimeres, etc., used for general suitings. Francis said that flannels were determined by handle, appearance, and structure; that a flannel might have a worsted warp, but in that case the preponderance of weight would have to be carded wool; that all of the goods covered by protest 785384 were comparatively of soft finish and that some of them bordered on flannels but were fulled too much; that he classified some of the goods as worsteds because the preponderance of weight in his opinion was worsted, but just how he determined the weight of the worsted and wool does not appear. He stated that the ordinary width of cassimeres was 56 inches finished and that when he spoke of flannels 54 to 56 inches wide he meant the same thing—that is, flannels finished. He said that very few flannel suitings were woven for every-day wear, but that flannel suits were worn for outings in summer and hot weather. He said that persons dressed in some of the cloths involved might be referred to as "having on their flannels," but that the goods were not flannels.

John E. J. Clare testified to the effect that flannel was a carded woolen fabric of plain or twill weave with very little or no finish other than that which it possesses as it comes from the loom or which is produced by scouring or slightly fulling; that a flannel is a fabric which can be worn next to the skin; that cheviots and worsteds differ in structure and finish from flannels; that no cloth with a worsted warp can be a flannel and that a worsted warp removes a fabric absolutely from the classification of flannels; that some of the goods have had the fiber of the cloth raised or gigged and then sheared or napped and that flannels are not gigged or napped.

F. A. Tracy testified that in the wholesale clothing trade a flannel was a soft, light-weight, loosely constructed piece of wool goods, practically unfulled, and that a cloth subjected to the fulling process was thereby taken out of the category of flannels and that all of the exhibits had been fulled; that flannels are not fulled and that if a cloth is fulled at all it ceases to be a flannel. He said that he had never seen a flannel composed of a worsted warp and a wool weft, and that according to his experience flannels were limited in color to staple blacks, blues, and a few browns.

E. M. Stout testified in effect that flannels in the trade were understood to be soft, loosely woven, open-mesh fabrics made of short carded wool; that a flannel is not fulled, and when finished is about in the same condition as when it left the loom; that almost every one of the exhibits had been put through a fulling machine; that in the trade none of them were flannels; that some of them were worsteds, and that worsteds were never known as flannels; that most of the goods

were made of worsteds and fulled; that there were certain flannels on the market which would not be worn next to the skin, because too heavy for that purpose, and that he did not agree with the witness Clare that no fabric can be a flannel unless so finished that it can be worn next to the skin; that flannels were not excluded from the trade designation, because they were used in the manufacture of dress goods; that there is a men's wear flannel which is sold to the men's wear trade and may be used for heavy shirting or even for an inferior suiting; that silk, linen, or worsted yarns can not be used in the making of flannels known as such to the trade in this country. A flannel must be all wool. No flannel can have a worsted warp in the men's trade. If a flannel had a worsted stripe, it would not be a flannel—not in the men's trade. He said that most of the goods were made of worsteds, and therefore could not be flannels. He could not say whether Exhibit 1, protest 764744, had been fulled at all, but that he did not believe it was a flannel; that the exhibit was women's dress goods, and that it could not be worn as men's wear flannel, and was not flannel in the trade. He admitted that there were dress goods which were flannels.

C. J. Mass said flannel in the trade meant a fabric made from a carded wool stock spun loosely in order not to harden it, which, after weaving, is put through a washer; *that flannels are never fulled; that is the characteristic of flannels;* that fulling tightens the fabric and that flannels are washed and not fulled. Flannels are scoured to cleanse them and to bring the cloth together. He said that a flannel may have a worsted warp and a wool weft; that Exhibit 1, protest 764744, was a "Lindsey;"[1] but whether it had been fulled or not he could not say. He stated that the fibers of Exhibit 1 had been raised up by gigging and the nap removed by shearing. He further testified that flannels might have worsted or silk yarn in the warp and might have a worsted warp and a wool weft; that there are flannels used for shirtings and women's wear. He admitted that in another case he had testified that flannels were light material for wear in summer and underwear in winter.

W. A. Tucker testified that flannel is made of a fine, soft, short carded wool and that flannels are fulled very slightly—in many instances not at all; that some flannel mills have no fulling machinery and in other mills flannels are fulled a little; that anyone familiar with the trade could tell from the appearance of a cloth whether or not it was a flannel; that in the mill the expression "in the flannel" means a cloth that has not been through any finishing process, and that the cloth is in the same state as it comes from the loom; that the goods in question were in the flannel class as they came from the loom; that flannels may be fulled slightly, but never gigged; that

---

[1] Reporter's note: Linsey.

gigging scratches up the fiber and gives to the goods a nappy appearance—roughens the surface—and that by shearing so much of the nap is removed as is desired; that some of the goods had been gigged and that almost all of them had been fulled and sheared; that some of them had been fulled extensively and some not very much.  He subsequently stated that all of the exhibits had been fulled and that he would have to examine them more closely to "determine gigging"; that a flannel does not contain worsted in the warp, but may have a slight amount of cotton carded in with the wool.  This witness said that the warp of a flannel is always wool and that he did not consider a cloth with cotton warp and wool filling as a flannel.  It was stipulated between counsel on both sides that Mr. Frederick H. Blaine, of the Allen Lane Corporation, and Mr. Louis Salomon, of Sach, Sanger, Salomon & Co., if called, would testify substantially to the same effect as the other Government witnesses in the Baruch, Wolff case.

It is apparent from this testimony that the Government's witnesses in the Baruch, Wolff case were at variance with themselves as to the trade meaning of "flannels."  Some of these witnesses were positive that flannels were never fulled at all, and that silk woolen or worsted yarns could not be used in the making of cloth known to the trade as "flannels."  Others were equally positive that flannels might be fulled a little, and that there were some flannel mills which had fulling machinery for that purpose; that there were flannels known to the trade which had a worsted warp and a wool weft, and that the admixture of worsted or silk yarns in the warp did not necessarily take a cloth out of the category of flannel.  John E. J. Clare was of the opinion that a cloth, to meet the commercial designation of flannels, had to have a finish which would permit of its being worn next to the skin, and that flannels were not used for suiting or outer garments.  He was contradicted by the witness Stout, however, who said that flannels were not excluded from the trade designation because they were used in the manufacture of dress goods, and that there were flannels sold to the men's wear trade which could be used for heavy shirtings or even for an inferior suiting.  Confirming his testimony in another case Stout made the further statement that flannels were light material for wear in summer and underwear in winter.

In the pending issue five witnesses testified for the importers that all of the goods were flannels with the exception of Items 6097, 6093, 6198, and 6244, covered by protests 809687 and 809688, of J. B. Ellison & Sons.  Their testimony was supported by that of J. B. Thompson, W. H. Hansen, Clarence A. Walter, Herbert L. Moore, William M. Weber, and Jerome Wolff, given on the hearing of the

Baruch, Wolff protests and introduced in evidence in this case by the importers. Wolff's testimony was limited by him to merchandise which was white or principally white in color because he did not deal in goods represented by the exhibits of a predominant dark color.

The witnesses for the importers and for the Government agreed that flannel was a soft, loosely woven fabric, and that whether a cloth was a flannel or not was determined by the experienced man in woolens by the "feel and appearance of the material."

With no other testimony in the case it might be well said that the weight of the evidence as to commercial designation was on the side of the importers; but in addition to the testimony as to the nature of the goods, commercially speaking, we have before us the reports of Government Appraiser Sague and of Government Examiners Bennett, Nolan, Schultz, and Williams, in which it is stated definitely that the goods covered by 40 out of the 61 protests are flannels dutiable as wool cloth. The fabrics covered by the remaining 21 protests were returned either as wool cloth not commercially known as flannels or as unfinished worsteds and outing cloths or as wool cloth used for the making of dress goods or outer wearing apparel. The merchandise referred to in 7 of these 21 protests was described by the collector of customs as flannels.

Remembering that it is stipulated that the goods of J. B. Ellison & Sons and those of R. Connor are substantially the same, it is at first a bit difficult to understand just how it came about that the examiners and appraisers reported goods covered by the majority of the protests as flannels, and goods admittedly of the same kind covered by other protests, as wool cloth, to say nothing of the collectors who reported to the board as flannels some of the fabrics which were reported by the examiners and appraisers as wool cloth. This difference, however, in the reports as to goods of the same kind disappears in a large measure in the light of the testimony of Examiners Williams and Nolan, who were called by the importers and testified that all flannels used in the making of dress goods or suitings were classified under the act of 1913 by the customs house, just as they had been under the act of 1909, a classification, by the way, which wholly ignored the fact that paragraph 379 of the act of 1909 was limited to flannels for underwear and that paragraph 289 of the act of 1913 covers all flannels regardless of use. From the testimony of the examiners it further appears that the practice of classifying under paragraph 289 as flannels only such flannels as were used for underwear was modified by a decision of the board, which held that flannel shirtings should be classified as flannels under paragraph 289. After that decision customs officials, according to the testimony, imposed

the flannel duty on flannels used for underwear and on those used for shirtings as well, but declined to recognize the fact that the plain terms of paragraph 289 covered all flannels without limitation.

In view of the testimony in the case, the reports of the examiners, appraisers, and collectors, and of the stipulation of counsel that the goods included in the J. B. Ellison & Sons and R. Connor protests are the same, we are of the opinion that the importers' protests should be sustained as to all of the goods with the exception of items 6097, 6198, 6244, and 6093, covered by protests 809687 and 809688, which items J. Howard Ellison, of the firm of J. B. Ellison & Sons, testified were not flannels. The protest of J. B. Ellison & Sons should be sustained, therefore, except as to these items, but inasmuch as it appears that all the flannels of that firm have a value of more than 50 cents per pound, the duty imposed thereon should be 30 per cent ad valorem and not 25 per cent, as claimed in protest 804227. This decision is based on the record as made, and, because the distinction between fabrics approximately of the same quality and materials is sometimes exceedingly fine and difficult to ascertain, as noted by Judge Story in Cary v. Curtis (3 How., 236–256), we think it well to expressly leave open the question as to the conclusion which might have been reached as to some of the merchandise had there been no stipulation that the goods covered by the protests of R. Connor, J. B. Ellison & Sons, and Baruch, Wolff & Co., were substantially of the same kind.

The decision of the Board of General Appraisers is *affirmed* as to items 6093, 6097, 6198, and 6244, and as to all other items here involved it is *reversed*.